**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**BENNY WILLYERD**                                                                                   **PLAINTIFF**

V.                                            **CASE NO. 3:16-CV-00006 BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                                                  **DEFENDANT**

**ORDER**

**I.  Introduction:**

Plaintiff Benny Willyerd applied for disability benefits on March 26, 2013, alleging a disability onset date of October 21, 2008.[1]  (Tr. at 35)  After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 44)  The Appeals Council denied his request for review.  (Tr. at 1)  The ALJ's decision now stands as the final decision of the Commissioner.  Mr. Willyerd filed this case seeking judicial review.  The parties have filed their briefs and the case is ripe for decision.[2]

**II.  The Commissioner's Decision:**

The ALJ found that Mr. Willyerd had not engaged in substantial gainful activity since his last denial of benefits on June 7, 2011.  (TR. at 37)   At Step Two, the ALJ

---

[1] Mr. Willyerd previously applied for benefits in 2009 and was denied benefits after a hearing in a decision dated June 7, 2011.  That determination is administratively final; therefore, the relevant period considered both by the ALJ and by this Court is June 8, 2011 through December 31, 2013 (Mr. Willyerd's date last insured).

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

found that Mr. Willyerd has the following severe impairments: degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, and limited vision. (Tr. at 38)

After finding that Mr. Willyerd's impairments did not meet or equal a listed impairment (Tr. at 38), the ALJ determined that Mr. Willyerd had the residual functional capacity ("RFC") to perform light work, except that he could not perform work that requires the climbing of ladders, ropes, or scaffolds, with no more than occasional climbing of ramps and stairs; he could only occasionally balance, kneel, crouch, or crawl; he could not perform work that would expose him to unprotected heights; he could perform work requiring no more than frequent fingering and handling; and he could perform work only where excellent vision is not required. (Tr. at 39)

The ALJ found that Mr. Willyerd could not perform his past relevant work. (Tr. at 42) At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Mr. Willyerd's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform at the light level, specifically, janitor/cleaner and cafeteria attendant. (Tr. at 43) Based on that Step Five determination, the ALJ found that Mr. Willyerd was not disabled. (Tr. at 44)

### III. Discussion:

A. Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).

"Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). Stated another way, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

    B. Mr. Willyerd's Argument on Appeal

Mr. Willyerd argues that substantial evidence does not support the ALJ's RFC finding because the ALJ's credibility analysis was flawed. Specifically, he argues that the ALJ should have included a sit-stand option based on the statement of a consultative examiner, Dr. Mark Tait, M.D., that Mr. Willyerd "would require periods of sitting throughout the day." (Docket entry #14 at 12, Tr. at 296). Mr. Willyerd speculates that this means he could not stand or walk for six hours in a normal workday, and therefore, could not perform work at the light level.

A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations, and it must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). The ALJ considered the record as a whole in arriving at the appropriate RFC.

The medical evidence reveals that Mr. Willyerd had degenerative disc disease at multiple levels in the lumbar spine.  (Tr. at 284, 287, 312-313, 348)   His treating doctors and the state agency consultative doctors agreed on that diagnosis.  (Tr. at 71, 82)  Straight leg raises, however, were negative on March 19, 2012 and May 4, 2013 (Tr. at 280, 295)  Dr. Tait found, in a May 4, 2013 examination, that Mr. Willyerd could rise from a sitting position without assistance, bend and squat without difficulty, and that he had a full range of motion in his spine.  (Tr. at 295)  He could tandem walk without problems and could walk without an assistive device.  *Id*.  At that examination, Mr. Willyerd denied low back pain and said he was independent in activities of daily living.  (Tr. at 294)  Imaging of the lumbar spine showed good alignment, normal vertebral height, disc space within normal limits, and only mild-to-moderate degenerative disc disease.  Objective tests showing mild-to-moderate conditions do not support a finding of disability.  *Masterson v. Banrhart*, 363 F.3d 731, 738-39 (8th Cir. 2004).

The non-examining medical experts indicated that Mr. Willyerd could perform medium work. (Tr. at 71, 83).  Additionally, a functional capacity examination completed on November 24, 2009, showed that Mr. Willyerd could perform medium work with occasional lifting in the heavy classification.  (Tr. at 369).  The ALJ gave these opinions some weight, but restricted Mr. Willyerd to light work instead of medium or heavy work that state-agency consultants had recommended.  (Tr. at 42).

The record reflects that Mr. Willyerd shopped twice a week for groceries, picked up after himself, helped his wife with cooking, took care of his dog, played with his grandchildren, watched movies, and drove a car.  (Tr. at 15-22, 221-230) His pain restricted him from certain activities and he had to take breaks while cooking.  (Tr. at 228)  Mr. Willyerd testified that he had to sit to bathe himself could not walk very far (Tr. at 19-20).  The postural limitations in the assigned RFC (occasional climbing, balancing, kneeling, crouching, and crawling) incorporate Mr. Willyerd's alleged restrictions in daily activities. (Tr. at 39)  The ALJ did not err in his RFC finding; he properly considered the medical evidence and Mr. Willyerd's activities of daily living in arriving at the RFC.

 Mr. Willyerd also asserts that the ALJ did not give proper weight to his subjective complaints  of pain, but instead, selectively relied on evidence that weighed against Mr. Willyerd's credibility.  Before coming to a conclusion on a claimant's credibility, an ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including his prior work record, as well as observations by third parties and treating and examining physicians regarding: the claimant's daily activities; the duration, frequency and intensity of pain; precipitating and aggravating factors; dosage, effectiveness and side effects of medication; and functional restrictions.  *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).

Mr. Willyerd's various activities of daily living indicate that his pain was not as debilitating as he asserted.  In addition, the record is replete with evidence that pain

medications were effective for Mr. Willyerd.  In March 2012, his lumbar degenerative disc disease was controlled by medication.  (Tr. at 280)  On December 19, 2013, Dr. Hollis, M.D., Mr. Willyerd's primary care physician, noted that Mr. Willyerd's back pain was better with medication.  (Tr. at 345)  At the hearing on April 7, 2014, Mr. Willyerd testified that his medication "cuts my pain in half," and he said he had no side effects from medication.  (Tr. at 18)  Mr. Willyerd's statement to Dr. Hollis on September 30, 2010 that his pain was a 5 out of 10 with medications and a 10 out of 10 without them is consistent with his later reports that medication was effective.  (Tr. at 287)

At an April 28, 2011 hearing on his first application, Mr. Willyerd stated that oxycodone "knocks the edge of my pain," and that Celexa worked for his irritability.  (Tr. at 112)  Impairments that are controllable or amendable to treatment do not support a finding of total disability.  *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

Moreover, Mr. Willyerd sought only conservative medication management, rather than surgery, injections, or physical therapy.  See *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that failure to seek regular and available medical treatment undermines claims of disabling pain).  Reports from Manila Rehab Services in August 2008 indicate that, while Mr. Willyerd was supposed to attend 12 visits within 31 days, he failed to show up for his appointment and did not reschedule.  (Tr. at 331, 337)

Mr. Willyerd elected not to have carpal tunnel surgery because he could not afford it.  (Tr. at 106)   There is no record that he sought free or low-cost surgical options, which

is a valid reason for an ALJ to discount a claimant's credibility. See *Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (absent evidence claimant was denied low-cost or free medical care, claimant's argument he could not afford medical care was appropriately discounted); *Goodale v. Halter*, 257 F.3d 771, 773-74 (8th Cir. 2001) (holding as permissible the ALJ's regard of claimant's refusal to undergo carpal tunnel surgery as evidence that pain was "something [claimant] could live with.")

Finally, Dr. Hollis did not impose any functional restrictions on Mr. Willyerd, although he regularly treated Mr. Willyerd at his clinic. A lack of physician-imposed restrictions may serve as a reason to discredit claims of disabling pain. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003).

The ALJ properly weighed the *Polaski* factors in making his credibility determination, and the Court will not disturb the ALJ's finding that Mr. Willyerd was not disabled. The credibility of a claimant's subjective complaints is primarily a matter for the ALJ to decide, not the courts. See *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987).

## IV. **Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The RFC determination incorporated the evidence in the record as a whole, and the ALJ did not err in finding Mr. Willyerd only partially credible. The finding that Mr.

Willyerd was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is, affirmed.  The case is dismissed, with prejudice.

IT IS SO ORDERED this 23rd day of January, 2017.

_____
UNITED STATES MAGISTRATE JUDGE